PROSKAUER ROSE LLP
Neil H. Abramson (NA-0889)
Joshua F. Alloy (JA-4372)
1585 Broadway
New York, New York 10036
(212) 969-3000
*Attorneys for Defendants*
*The New York Times Co. and*
*City & Suburban Delivery Systems*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
STEVE S. LAM and SAMMY JACKSON,  :

                         Plaintiffs,  :

     -against-  :

THE NEW YORK TIMES COMPANY, CITY  :
AND SUBURBAN DELIVERY SYSTEMS, INC. :
and THE NEWSPAPER AND MAIL  :
DELIVERERS UNION,  :

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

09 Civ.

**ECF CASE**

**NOTICE OF REMOVAL**

New York Supreme Court,
County of New York
Index No. 09-107837

To:    The United States District Court
        for the Southern District of New York

        PLEASE TAKE NOTICE THAT Defendants The New York Times Company

("The Times") and City and Suburban Delivery Systems, Inc. ("C&S") (together, "Corporate

Defendants"), by its attorneys, Proskauer Rose LLP, hereby file this Notice of Removal of the

above-captioned action to the United States District Court for the Southern District of New York

from the Supreme Court of the State of New York, County of New York, where the action is

now pending, as provided by Title 28, United States Code, Chapter 89. In support of this Notice

of Removal, Corporate Defendants now state:

1

1.      The action was commenced on or about June 2, 2009, under Index No. 09-107837 in the Supreme Court of the State of New York, County of New York, and no further proceedings have been had therein.

2.      On or about June 2, 2009, The Times was served by personal delivery with a copy of the Summons and Complaint, and a copy of the Summons and Complaint was mailed to C&S. Pursuant to 28 U.S.C. §1446(a), a true and correct copy of the Summons and Verified Complaint received by The Times and C&S is attached hereto as Exhibit 1. No other process, pleadings or orders have been served upon C&S or The Times in this action.

3.      Defendant The Times is a New York corporation and employer in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, and until January 4, 2009 was the parent company of C&S. The Times is a party to a collective bargaining agreement with the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU"), a labor organization representing employees in an industry affecting commerce within the meaning of Section 301 of the LMRA.

4.      Until January 4, 2009, Defendant C&S was an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA and was also party to a collective bargaining agreement with the NMDU. Plaintiffs were both employees of C&S and members of the NMDU.

5.      On January 4, 2009, C&S ceased all operations and terminated all employees, including both Plaintiffs. The Times, C&S, and the NMDU had previously bargained for and entered into a collectively bargained agreement, dated November 20, 2008, concerning the closure of C&S and the effects of the closure on C&S employees, including Plaintiffs ("Closing Agreement"). A true and correct copy of the Closing Agreement is attached hereto as Exhibit 2.

2

6.       The Closing Agreement provides, *inter alia*, for certain post-separation severance benefits for eligible NMDU-represented employees in exchange for a release, or alternatively, an opportunity to become employed with The Times.  The severance benefits are governed by and provided in accordance with the terms of the City & Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan for Eligible Employees Represented by the Newspaper and Mail Deliverers' Union of New York and Vicinity (the "Severance Plan").  The Severance Plan is an "employee benefit plan" within the meaning of, and governed by, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  A true and correct copy of the Severance Plan is attached hereto as Exhibit 3.

7.       Broadly read, in this action, Plaintiffs, both former employees of C&S and members of the collective bargaining unit represented by the NMDU, allege that Defendants breached the terms of the Closing Agreement and/or Severance Plan (and supporting documents), and engaged in fraud in connection with Closing Agreement and/or Severance Plan. Plaintiffs seek to recover, *inter alia*, severance pay under the Severance Plan.

8.       Based on the foregoing, Plaintiffs' Complaint is being removed to federal court because: (i) Plaintiffs' claims are substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract and their action is governed by Section 301 of the LMRA and controlled solely by federal law; and (ii) Plaintiffs are asserting claims for benefits under Section 502(a)(1)(B) of ERISA, and as such, the claims are subject to complete preemption under ERISA.

9.       The allegations in the Complaint, which include claims for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce, and claims for fraud, are sufficient to bring this case within the provisions of the

3

LMRA, 29 U.S.C. §185, and therefore this Court has original jurisdiction under that section, as well as pursuant to 28 U.S.C. §§ 1331 and 1337. It is also an action of a civil nature founded on a claim of right arising under the laws of the United States, and therefore may be removed to this court under the provisions of 28 U.S.C. §1441(b) without regard to the citizenship of the parties.

10.    In addition, the allegations in the Complaint are sufficient to bring this case within the provisions of ERISA, which provides the exclusive remedy for actions within its scope, and preempts all other remedies. See Section 514 of ERISA, 29 U.S.C. § 1144. Removal of such cases to federal court is therefore proper. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 58 (1987). ERISA's preemptive power is so strong that all claims that relate to employee benefit plans are automatically re-characterized as federal in nature and are, therefore, removable to United States District Courts. This includes Plaintiffs' claims for fraud. See Pilot Life v. Dedeaux, 481 U.S. 41, 46 (1987); Smith v. Dunham-Bush, Inc., 959 F.2d 6, 8-9 (2d Cir. 1992). Thus, Plaintiff's entire claim is necessarily federal, and therefore removable, under the "complete preemption" doctrine, despite the fact that the Complaint was filed in state court and may assert state law claims.

11.    The district courts of the United States have original "federal question" jurisdiction over claims brought under ERISA. See ERISA Section 502(e), 29 U.S.C. § 1132(e); 28 U.S.C. § 1331. Therefore, as a civil action founded on a right or claim arising under the laws of the United States, this action is properly removable to this Court pursuant to 28 U.S.C. § 1441(a) and (b). See also Ingersoll Rand Co. v. McClendon, 498 U.S. 133 (1990).

12.    A cause of action filed in state court which is preempted by ERISA is removable to federal court under 28 U.S.C. § 1441 as an action arising under federal law which would be

4

removable, if sued upon alone, whether or not the ERISA-related nature of the action appears on the face of the Complaint. See Metropolitan Life, 481 U.S. at 67.

13.     To the extent any of Plaintiffs' alleged state law claims are not preempted by the LMRA or ERISA, this Court may nevertheless exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367, as any state law claims alleged are related to the LMRA and/or ERISA claims by subject matter, time period and/or alleged action.

14.     This Notice of Removal has been filed within thirty days of service upon Corporate Defendants of a copy of the Complaint, pursuant to 28 U.S.C. §1446(b).

15.     A copy of this Notice of Removal will be filed with the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d).

16.     Promptly after the filing of this Notice of Removal, written notice of the filing of this Notice of Removal will be given to Plaintiff as required by law. See 28 U.S.C. § 1446(d).

17.     By filing this Notice of Removal, Defendant does not waive any defenses which may be available to it.

18.     In the event this Court should have any questions about the propriety of removal or may be inclined to remand this action, Defendant respectfully requests that the Court issue an order to show cause why the case should not be remanded, affording the parties an opportunity to provide the Court with full briefing and argument.

19.     The NMDU has also been named as a Defendant in this action, and received a copy of the Summons and Complaint on or about June 12, 2009. By and through their attorney, Bruce S. Levine, the NMDU consents to the removal of this action to federal court. A Notice of Joinder and Consent to Removal is attached hereto as Exhibit 4.

20.     This Notice is executed pursuant to Federal Rule of Civil Procedure 11.

5

WHEREFORE, Defendants The Times and C&S hereby remove this action from the

Supreme Court of the State of New York, County of New York, to the United States District

Court for the Southern District of New York.


Dated: New York, New York
       June 22, 2009

                                        PROSKAUER ROSE LLP

                                        By: _____

                                        Neil H. Abramson (NA-0889)
                                        Joshua F. Alloy (JA-4372)
                                        1585 Broadway
                                        New York, New York 10036
                                        (212) 969-3000
                                        *Attorneys for Defendants*
                                        *The New York Times Co. and*
                                        *City & Suburban Delivery Systems*


To:    Douglas U. Rosenthal, Esq.
       The Rosenthal Law Firm, P.C.
       350 Broadway, Suite 214
       New York, NY 10013
       (212) 625-8300
       *Attorneys for Plaintiffs*

       Bruce S. Levine, Esq.
       Cohen, Weiss and Simon LLP
       330 West 42nd Street, 25th Floor
       New York, NY 10036
       (212) 563-4100
       *Attorneys for Defendant NMDU*

6

EX. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------X
STEVE S. LAM and SAMMY JACKSON,

                    Plaintiff,

              -against-

THE NEW YORK TIMES COMPANY,
CITY AND SUBURBAN DELIVERY SYSTEMS,
INC. and THE NEWSPAPER AND MAIL DELIVERERS
UNION,

                    Defendant(s).
------------------------------------X
TO THE ABOVE NAMED DEFENDANTS:

Filed on: 06/02/09

Index No.: 107837/09

**SUMMONS**

Plaintiff designates
New York as the place
of trial

The basis of venue is
Defendant's address
Plaintiff is located at
68-07 32nd Avenue,
Woodside, New York

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action
and to serve a copy of your answer, or it the complaint is not
served with this summons, to serve a notice of appearance, on the
plaintiff's attorney, within twenty (20) days after the service of
this summons, exclusive of the day of service (or within thirty (30)
days after service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

Dated:    New York, N.Y.
          June 2, 2009

                                        THE ROSENTHAL LAW FIRM, PC
                                        950 Broadway, Suite 214
                                        New York, New York 10013
                                        (212) 625 - 8300

To:   THE NEW YORK TIMES COMPANY
      620 8th Avenue
      New York, NY

      CITY AND SUBURBAN DELIVERY SYSTEMS, INC
      1111 Marcus Ave Ste M21
      New Hyde Park, NY 11042-1034

      THE NEWSPAPER AND MAIL DELIVERERS UNION
      41-18 27th Street
      Long Island City, NY 11101

NEW YORK
COUNTY CLERK'S OFFICE

JUN _ 2 2009

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------X          Index No.:
STEVE S. LAM and SAMMY JACKSON,

                                               ACTION NOT BASED ON A CONSUMER
                                               CREDIT TRANSACTION

                     Plaintiff,               *VERIFIED COMPLAINT*

          -against-


THE NEW YORK TIMES COMPANY,
CITY AND SUBURBAN DELIVERY SYSTEMS,
INC. and THE NEWSPAPER AND MAIL DELIVERERS
UNION,

                 Defendant(s).
-------------------------------------X

     Plaintiffs, by their attorneys, The Rosenthal Law Firm, P.C.,

as and for its Verified Complaint, respectfully alleges:

     1.   At all of the times hereinafter mentioned, the Plaintiff,

STEVE S. LAM was and still is a resident of 68-07 32nd Avenue, Woodside,

New York.

     2.   At all of the times hereinafter mentioned, the Plaintiff,

SAMMY JACKSON was and still is a resident of 2601 Glenwood Road,

Brooklyn, NY, 11210.

     3.   The defendant, THE NEW YORK TIMES COMPANY, (hereinafter

referred to as "NYT") upon information and belief is a corporation

with its principal place of business located at 620 8th Avenue, New

York, NY.

     4.   The defendant, CITY AND SUBURBAN DELIVERY SYSTEMS, INC.,

(hereinafter referred to as "C&S") upon information and belief is a

corporation with its principal place of business located 1111 Marcus

Ave Ste M21, New Hyde Park, NY 11042-1034.

### STATEMENT OF FACTS

5.    On or about December 10, 2008, Plaintiffs received a written communication (the "Cover Letter") from Defendant C&S advising of the closure of C&S, effective January 4, 2009 and the elimination of their positions as of that date.

6.    The cover letter notified plaintiffs of their post-separation options, and allowed until January 26, 2009 to complete an "Election Form" to make a choice concerning said options.

7.    The post-separation options included an opportunity to participate in Defendant C&S's Severance Pay Plan for Eligible Employees (the "Severance Plan") represented by the Newspaper And Mail Deliverers Union Of New York And Vicinity ("NMDU") or an opportunity to become employed with the New York Times Company.

8.    The cover letter specifically advised that "Employees who are employed with the Times cannot be participants in the severance plan and will not receive any payment or benefits under the Severance Plan."

9.    With respect to the Severance Plan, a Buyout Option (the "Buyout Option") was offered to the first 140 most senior employees that did not obtain employment with the New York Times Company.  The Buyout Option was to provide a one time, lump sum severance payment of $100,000 (minus applicable taxes and withholding) as well as the continuation of contributions to the NMDU Health and welfare fund.

10.    In order to accept the Buyout Option plaintiffs were required to execute a "Separation Agreement and General Release".

The cover letter also provided notification, as follows, "assuming you opt for the Severance Plan, you also have seven days from the date you sign the Release Agreement to revoke your decision, you must do so in writing . . . by no later than the seventh (7th) day after you have signed the agreement.  If you do not revoke your decision to elect a severance plan, it will become final on the eighth (8th) day after you made your decision. Thus your signed release agreement will become effective on the eighth (8th) day after you have signed it."

11.  Plaintiffs were eligible for the Buyout Option and fulfilled all requirements in order to receive same, including execution and timely submission of the "Separation Agreement and General Release" as well as the Election Form.

12.  On or about March 4, 2009, plaintiffs received their Direct Deposit Voucher which contained information advising of a payment for earnings in the amount of $9,510.96 with a line description entitled, "Buyout Complete".

13.  Upon information and belief, other employees of Defendant C&S and members of Defendant NMDU who were senior to plaintiffs, opted under the Severance Plan to become employed with the New York Times, and actually worked for the New York Times for approximately one month. After accepting such employment and drawing a salary from the New York Times Company, said employees thereafter revoked their decision, beyond the date permitted for revocation, and opted to receive benefit under the Buyout Option in contravention of the provision that any such revocation was to be made within seven days

after the execution of the "Separation Agreement and General Release".

14. Upon information, Defendant NMDU accepted these revocations beyond the date permitted for revocation in violation of the representations and rules as set forth in the cover letter. On account of said revocations, plaintiffs were no longer considered to be in the group of 140 most senior employees, and accordingly were wrongfully deemed ineligible for the Buyout Option.

## AS AND FOR A FIRST CAUSE OF ACTION - *Breach of Contract*

15. Plaintiffs repeat paragraphs "1" through "14".

16. On or about January 6, 2009 Plaintiffs executed the "Separation Agreement and General Release" (the "Agreement") wherein they elected to participate in the Severance Plan and chose the Buyout Option.

17. The Agreement, in pertinent part, provided for Plaintiffs to receive a "one-time lump sum severance payment of $100,000.00 (minus applicable taxes and withholdings) payable within 30 days of the later of the date when plaintiffs returned the agreement or submitted to a required medical exam.

18. Plaintiffs fulfilled all of their obligations pursuant to the Agreement between the parties.

19. Plaintiffs were not paid the agreed upon Buyout Plan sum of $100,000.00 despite full compliance as required under the Agreement.

20. There remains due and owing to Plaintiffs $100,000.00 which represents the outstanding balance on the agreed upon and

specified value of the Buyout Plan.

21.  Due demand therefor has been made but not satisfied.

22.  By reason of the foregoing, plaintiffs, and each of them,
are entitled to judgment in the sum of $100,000.00 with interest from
February 6, 2009.

### AS AND FOR A SECOND CAUSE OF ACTION-FRAUD

23.  Plaintiffs reallege paragraphs 1-22 as if fully alleged
here.

24.  Plaintiffs further allege that Defendants throughout the
discussions leading to the execution of the Agreement, made various
oral representations that they had the financial viability and
strength to make timely payments as provided for under the Agreement.

25.  Relying on such representations, Plaintiffs entered into
the Agreement.

26.  Upon information and belief, at and throughout the time
such representations were made, C&S, NMDU and NYT were
undercapitalized and did not have the financial viability and
strength to make timely payments as provided for under the Agreement,
and such representation were therefore, false.

27.  Upon information and belief, defendants knew at the time
they were made that such representations were false and were made
without having any intention of completely fulfilling defendants
obligations to Plaintiffs yet said representations were made to
induce Plaintiffs to enter into the Agreement.

28.  In the alternative, Defendants allowed other employees to
revoke their decisions in violation of the Agreement, prejudicing

Plaintiffs ability to be compensated under the buyout option.

29.  Plaintiff suffered damages as a result of such representations concerning Defendants' financial viability and strength to make timely payments as provided for under the Agreement.

30.  By virtue of the foregoing, plaintiffs request judgment granting them compensatory damages against defendants in the amount of $100,000.00 with interest from February 6, 2009.

31.  The aforementioned misrepresentations, and material omissions, were made willfully and maliciously, with the intent to injure and oppress Plaintiffs and, by reason thereof, Plaintiffs are entitled to exemplary and punitive damages in an amount appropriate to punish and make an example of Defendants.

**WHEREFORE**, Plaintiff demands judgment as follows:

a.  On its first cause of action in the sum of $100,000.00 with interest from February 6, 2009.; and

b.  On its second cause of action in the sum of $100,000.00 with interest from February 6, 2009.;

c.  For the allowable costs, disbursements and legal fees herein; and

d.  Such other and further relief as may be just and proper.

Douglas U. Rosenthal
The Rosenthal Law Firm, P.C.
*Attorneys for Plaintiff*
350 Broadway, Suite 214
New York, NY 10013
(212) 625-8300

## VERIFICATION

The undersigned, an attorney duly admitted to practice law in New York State affirms under the penalty of perjury:

1.      I am the attorney for Plaintiff herein and have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true.

2.      The reason this verification is made by me and not by Plaintiff is that the Plaintiff is in another county.

3.      The grounds of my belief as to all matters not stated upon my own knowledge are information furnished by Plaintiff.

DOUGLAS ROSENTHAL

Affirmed:      New York, New York
               June 2, 2009

THE ROSENTHAL LAW FIRM, P.C.
350 BROADWAY, SUITE 214
NEW YORK, NEW YORK 10013
(212) 625-8300

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
STEVE S. LAM and SAMMY JACKSON,

                    *Plaintiff,*

          -against-

THE NEW YORK TIMES COMPANY,
CITY AND SUBURBAN DELIVERY SYSTEMS,
INC. and THE NEWSPAPER AND MAIL
DELIVERIES UNION,

                    *Defendant(s).*

---

### SUMMONS with VERIFIED COMPLAINT and VERIFICATION

---

Attorneys for Plaintiff

## THE ROSENTHAL LAW FIRM, PC
### ATTORNEYS AT LAW

350 BROADWAY, SUITE 214
NEW YORK, NY 10013
TEL: (212) 625-8300
FAX: (212) 625-8661

EX. 2

**Agreement Between Newspaper and Mail Deliverers Union
and New York Times
Concerning Closure of City and Suburban
November 20, 2008**

1.     <u>C&S Closure</u>

City and Suburban ("C&S") will cease all delivery operations on or after January 4, 2009.

2.     <u>Employment With NYT</u>

a.     The Times agrees to transfer 65 active C&S regular situation holders ("RSH's") to the Times' Delivery Department no later than January 4, 2009. These RSH's will be selected to transfer to the Times in order of their seniority, subject to eligibility requirements set forth in paragraph 2(c) below.

b.     The RSH's referred to in paragraph 2(a) above shall be placed in order of their seniority on the bottom of the Times' seniority list and count toward the RSH minimum set forth in paragraph III of the December 8, 2005 Memorandum of Agreement between the Times and the NMDU.

c.     To be eligible to transfer to the Times, an active C&S RSH must (i) possess a Class A CDL, (ii) pass a DOT physical and (iii) be certified to drive a tractor-trailer by The Times Delivery Department. RSHs shall have 90 days from the date of their selection to satisfy these requirements. RSH's who are on workers compensation leave at the time of their selection shall have 90 days from the date they are cleared to return to work to satisfy these requirements. In the event the transferred individual fails to satisfy these requirements within the time limits set forth above, the Times shall pay such individual severance pay pursuant to Section 5 below after the individual executes a general release, and The Times and the Union shall select another eligible individual for transfer to the Times in accordance with the requirements of this Section 2 (including the execution of a general release), provided that the selected individual, upon satisfying as expeditiously as possible the three requirements set forth above to be eligible to transfer to The Times, immediately repays to The Times any money received under this Agreement.

d.     RSH's who transfer to the Times will be guaranteed the opportunity to work five straight time shifts per week until the expiration of the current Times/NMDU collective bargaining agreement, except that this guarantee shall last only for as long as The Times delivers in Manhattan substantially the same number of New York Times newspapers as were delivered by both C & S and the Times in

Manhattan (including both home delivery (T-Routes) and retail delivery) on September 8, 2008, provided that the use of alternate delivery pursuant to paragraph 3 (c) below shall not constitute a basis for calculating a reduction in the number of newspapers delivered. In addition:

i.   The employment guarantee will be suspended in the event that the Times' operations are suspended in circumstances under which RSH's are not entitled to be paid under the Times/NMDU collective bargaining agreement;

ii.  The guarantee shall cease in the event the Times stops publishing a daily newspaper;

iii. The guarantee shall not apply to an employee who terminates employment for any reason, including but not limited to retirement, resignation, discharge, death and/or permanent disability; and

iv.  The guarantee may be terminated by the Times at its option in the event that a violation of the no-strike clause occurs and the violation continues notwithstanding the issuance of a temporary restraining order after a hearing.

e.   The Times shall have the right to utilize fully the services of employees covered by the guarantee set forth in paragraph 2(d) above before employing any additional employees, with the understanding that utilization of such employees will be done in reverse seniority order.

f.   The Times shall have the right to select individuals from among the RSHs being transferred from C&S to serve as foremen at the Times. Foremen may be selected among these RSHs without regard to their seniority.

g.   The 65 individuals who transfer from C&S to The Times in accordance with paragraph 2(a) shall be paid according to the wage scale in the Times/NMDU collective bargaining agreement.

h.   The RSHs who transfer from C&S to the Times shall not be eligible for severance pay pursuant to paragraph 13.B of the NMDU/C&S collective bargaining agreement, paragraph 5 of this Agreement, or any other contract or agreement.

i.   The Times, with the cooperation of NMDU, shall exercise its best efforts, as expeditiously as possible, and prior to the date the buyouts and severance payments specified herein are offered, to remove from the current C&S RSH seniority list those RSHs who have been inactive for an extended period of time and who have no reasonable prospect of returning to employment.

2

j.  To the extent permitted by law, the RSH's who transfer to the Times pursuant to this paragraph shall carry over to the Times accrued but unused vacation and personal time to the same extent they would have if they had continued to work at C&S under the NMDU/C&S collective bargaining agreement.

## 3.  Jurisdiction

a.  Effective January 4, 2009, and except as set forth in paragraph 3(c) below, the Times agrees that it will only deliver its newspaper through direct delivery in all T-routes, LaGuardia and Kennedy airports and in the borough of Manhattan. Such direct delivery shall include, but shall not be limited to, school routes in Manhattan, LaGuardia and Kennedy airport routes, T-routes currently delivered by C&S, deliveries in the west side of Manhattan, Saturday Night Bulldog routes in Manhattan and deliveries on the east side of Manhattan. All direct delivery work described above shall be subject to the methods and extent clause of the Times/NMDU collective bargaining agreement. The Times may begin transferring some or all of this work after the completion of the selection of 65 employees pursuant to paragraph 2(a).

b.  Except as provided herein, there shall be no requirement that The Times pay guaranteed overtime or utilize tailmen in connection with any of these deliveries, provided that the Union retains the right to file a grievance under Section 3-H.1 of the Collective Bargaining Agreement. Drivers who are required to collect cash shall receive a weekly minimum overtime payment based on the number of cash sale stops served per week. That minimum payment shall be one hour per week for drivers who serve 10 or more but fewer than 19 cash stops; two hours per week for 20 or more but fewer than 29 cash stops; three hours per week for 30 or more but fewer than 39 stops; and four hours per week for 40 or more but fewer than 49 stops. All contractual provisions establishing a minimum number of T-routes, West Side Direct or Saturday Night Bulldog routes, or an obligation to pay for reducing the number of such routes, shall no longer apply.

c.  The Times may only use alternate delivery methods to service stops in Manhattan if such stops: (i) sell seven (7) daily copies or less of The New York Times on a daily basis, calculated based on a six-month average; or (ii) sell more than seven (7) daily copies *only* if such stops reasonably cannot be serviced or continued to be serviced through direct delivery despite the parties' best efforts to do so because an account is delinquent despite repeated efforts to secure payments or if an account discontinues its relationship with the Times notwithstanding reasonable efforts to retain the account. Notwithstanding the foregoing, the Times may only utilize direct delivery to service all Starbucks stores in Manhattan even though a particular Starbucks store sells seven (7) daily copies or less, provided that the Times may service a particular Starbucks store by alternate delivery if the store reasonably cannot be serviced or continue to be serviced

3

through direct delivery despite the parties' best efforts to do so. Under no circumstances may an RSH at The Times or who transfers to The Times under this Agreement be laid off or terminated as a result of the use of alternate delivery practices. All past practices regarding the use of alternate delivery in Manhattan are superseded by this provision.

d.    The Times shall take the necessary steps to ensure that all work currently serviced by alternate delivery that does not fall within the exceptions described in paragraph 3(c) above be serviced by direct delivery no later than January 4, 2009.

e.    By February 4, 2009, the Times and the Union shall establish a joint Direct Delivery Committee comprised of three members designated by the Union and three members designated by the Times. The Committee shall meet on at least a quarterly basis for the purpose of addressing issues relating to this provision and whether additional stops should be serviced by direct delivery. The Times shall make pension contributions on behalf of the Union Direct Delivery Committee members attending Direct Delivery meetings. The Committee shall explore the best practices for expanding direct delivery to accounts serviced by alternate delivery including, but not limited to, other alternatives to minimize account delinquencies.

f.    The Direct Delivery Committee will have the right to inspect current, relevant Manhattan delivery reports of The Times, and The Times will use its best efforts to obtain current, relevant delivery reports from any alternate delivery service it utilizes that are relevant to this provision. The Union shall execute an appropriate confidentiality stipulation covering the information in this paragraph.

g.    The Committee will meet semi-annually to determine whether an existing account falls within the numerical exception in paragraph 3(c)(i) based on the preceding six month average for that account. Provided that an account that exceeds the numerical criteria in paragraph 3(c)(i) is moved expeditiously from alternate to direct delivery, the fact that the account had been serviced through alternate delivery shall not form the basis for a grievance.

h.    The Times will notify the Union on a monthly basis of its intent to service a new account(s) through alternate delivery pursuant to the exceptions in paragraph 3(c)(i). The Union shall have thirty days to dispute the designation of the new account under paragraph 3(c).

i.    Disputes regarding the application of the exception in paragraph 3(c) shall be resolved in the following manner:

   i.    If the Union disputes whether an account is covered by paragraph 3(c)(i), the dispute shall referred within seven days to the Impartial Chair, who

4

shall hear the matter within seven (7) days of the Union's grievance (subject to the Impartial Chair's availability) and shall render a decision on whether the numerical threshold in paragraph 3(c)(i) has been satisfied on the day the matter is heard.

ii.   If The Times believes it is entitled under paragraph 3(c)(ii) to use alternate delivery for an existing account, it shall provide the Union with reasonable advance notice of that decision. In the event of a dispute regarding whether a new or existing account falls within the 3(c)(ii) exception, the matter shall be referred within seven (7) days to the Impartial Chair, who shall hear the matter within seven (7) days of the Union's grievance (subject to the Impartial Chair's availability) and shall render a decision on whether the account falls within the 3(c)(ii) exception on the day the matter is heard.

iii.   Except as provided for in paragraph 3(g), the Impartial Chair shall have the authority: (a) to award the affected drivers damages in the event of a violation of paragraph 3(c) in the form of compensation lost as a direct result of the failure to service the account through direct delivery; and (b) to direct that the account be returned to direct delivery expeditiously. The parties recognize that the Impartial Chair may accept hearsay testimony in connection with these proceedings. The Times may proceed with alternate delivery during the pendency of the Impartial Chair's decision.

j.   The Union reaffirms its commitment that bargaining unit members are required to make an efficient and effective delivery of the newspaper to direct delivery accounts.

## 4.   Buyouts

a.   The Times will offer voluntary buyouts in the gross amount of $100,000.00 (less applicable withholdings and deductions) to active RSH's at C&S on the annexed Exhibit A who (i) have at least one (1) year of service with C&S; (ii) do not obtain a regular situation with the Times; (iii) sign a general release provided to them by C&S; and (iv) submit to a medical exam directed by C&S. Payment of the buyout will not be contingent on the results of the medical exam. The Times agrees to accept buyout requests from 140 such RSH's. If more than 140 RSH's request a buyout, buyouts will be granted in order of seniority.

b.   Individuals who transfer to the Times pursuant to paragraph 2(a) above shall not be eligible for a buyout.

c.   The specific terms of the buyout programs described in this Agreement shall be set forth in separate documents that will be distributed to all eligible individuals

5

within 30 days following the effective date of this Agreement. All RSHs who receive buyouts shall be paid in full within 30 days of the Times' receipt of their completed buyout documents and the medical exam required in paragraph 4(a), whichever occurs later.

d.      Individuals who receive buyouts in accordance with this paragraph shall not be eligible for severance pay pursuant to paragraph 13.B of the NMDU/C&S collective bargaining agreement, paragraph 5 of this Agreement or any other contract or agreement.

## 5.    Severance Pay

a.      The Times shall pay severance pay to all active C&S RSH's on the annexed Exhibit A who (i) do not obtain a regular situation with the Times; (ii) do not apply for or are not accepted for a buyout in accordance with paragraph 4 of this Agreement; (iii) sign a general release provided to them by C&S; and (iv) submit to a medical exam directed by C&S. Payment of the severance pay will not be contingent on the results of the medical exam.

b.      Severance paid to RSH's under paragraph 5(a) above shall be paid in accordance with the severance documents in the gross amount of eight (8) weeks (40 shifts) of pay (less applicable withholdings and deductions), paid at the employee's current base rate of pay.

c.      The Times shall pay severance pay to all active C&S Group 1 employees on the annexed Exhibit B who (i) have at least one year of credited service with C&S; (ii) sign a general release provided to them by C&S; and (iii) submit to a medical exam directed by C&S. Payment of the severance pay will not be contingent on the results of the medical exam.

d.      Severance paid to Group 1 employees under paragraph 5(c) above shall be paid in accordance with the severance documents in the gross amount of four (4) weeks (20 shifts) of pay (less applicable withholdings and deductions), paid at the employee's current base rate of pay.

e.      Individuals who receive severance pay pursuant to this paragraph 5 shall not be eligible for severance pay pursuant to paragraph 13.B of the NMDU/C&S collective bargaining agreement or any other contract or agreement. This agreement supersedes paragraph 13.B of the C & S collective bargaining agreement.

f.      The Times may, in its discretion, make voluntary severance payments in an amount of its choosing to any other C&S employees not covered by this provision.

6

6. **Accrued Vacation and Personal Days**

The Times shall pay all NMDU-represented C&S employees for all vacation and personal days they had accrued but did not use as of their termination from employment with C&S, except to the extent vacation and personal time is carried over pursuant to paragraph 2(j) above.

7. **Contributions to Welfare Fund**

    a.    For 2009, The Times shall make a contribution of $11,001 to the Welfare Fund on behalf of each individual not covered by paragraphs 7(b) and 7(c) below, including those who are on workers compensation, who takes a buyout or receives severance pay pursuant to the terms of this Agreement.

    b.    For 2009, 2010 and 2011, the Times shall make an annual contribution of $8,427 to the Welfare Fund on behalf of each individual who takes a buyout in accordance with paragraph 4(a) above and who, as of January 1, 2009, will be (i) eligible for a pension under the Rule of 90 and (ii) not yet 65 years old. For 2012, the Times shall make a contribution of $4,213.50 on behalf of each such individual.

    c.    For 2009, 2010 and 2011, the Times shall make an annual contribution of $1,431 to the Welfare Fund on behalf of each individual who takes a buyout in accordance with paragraph 4(a) above and who as of January 1, 2009 will be at least 65 years old.

    d.    In addition to the contributions set forth in paragraphs 7(a), (b) and (c) above, the Times shall contribute $1 million to the Welfare Fund for 2010 and $1 million for 2011.

    e.    The Times shall make the payments required in paragraphs 7(a), (b), (c) and (d) above on a quarterly basis for the year for which the contributions are due.

    f.    Nothing in this Agreement is intended to provide Health and Welfare benefits to any individual who presently is not a participant in the Publishers' NMDU Welfare Fund.

8. **Supplemental Sickness and Accident Benefits**

The Times shall take whatever steps may be necessary to ensure that any C&S RSH who was receiving supplemental sickness and accident benefits as of September 8, 2008 shall continue to receive such benefits until the expiration of the 26-week period of coverage provided such RSH continues to be eligible for such benefits.

7

9.    **Business Transition**

In the event that an arbitrator or court of law determines that one or more NMDU-represented employees has interfered with the operations of C&S or the Times in the period prior to, or for a reasonable period following, the closure of C&S, including but not limited to interfering with the timely and complete delivery of the New York Times newspapers and products, such employee(s) shall be deemed to have forfeited any right to severance pay, buyouts or other benefits of this Agreement. Such forfeiture shall not limit any other remedies the Times may have in the event of such conduct.

10.   **Withdrawal of Grievances And Claims**

The NMDU agrees to waive and/or withdraw with prejudice any claim, cause of action or grievance that it has filed or could have filed against C&S and/or the Times as of the date of the execution of this Agreement in connection with the closing of C&S and/or the method of distribution of New York Times newspapers as a result of the closure of C&S, including but not limited to all claims under Section 1(h) of the 1984-1987 NMDU/C&S collective bargaining agreement and/or Section 12 of the 1981-84 NMDU/Times collective bargaining agreement as amended. The NMDU further acknowledges that the NMDU/C&S collective bargaining agreement shall have no further effect following the cessation of delivery operations by C&S.

11.   **Arbitration**

All grievances, differences and disputes arising out of the interpretation or application of this Agreement shall be resolved in arbitration before the Impartial Chair of the NMDU/Times collective bargaining agreement (currently Arbitrator Martin Scheinman), or, if the Impartial Chair is unavailable or unwilling to serve, before an arbitrator selected by the parties pursuant to the Labor Arbitration Rules of the American Arbitration Association. The grievance and arbitration provisions of the NMDU/Times and NMDU/C&S collective bargaining agreements, including but not limited to the requirement that a grievance first be submitted to the Joint Standing Committee, shall not be applicable to grievances, differences and disputes arising under this Agreement. In all disputes arising under this Agreement, including those arising under paragraph 3(c), the Union shall have a right to review any relevant documents in the possession of the Times a reasonable time in advance of any arbitration hearing, subject to reasonable confidentiality protections.

12.   **Definition of Term "Active"**

Wherever used in this Agreement, the term "active" refers to employees who are on the annexed Exhibit "A."

8

13. **Ratification**

It is understood and agreed that this Agreement is subject to ratification by each of the parties hereto and shall become effective upon ratification.

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement reached on November 20, 2008.

NEWSPAPER AND MAIL DELIVERERS' UNION
OF NEW YORK AND VICINITY

Dated: _November 24, 2008_

THE NEW YORK TIMES

Dated: _November 20, 2008_

9

**The New York Times**
620 EIGHTH AVENUE
NEW YORK, N.Y. 10018

TERRY L. HAYES
Vice President
Labor Relations

Tel: 212 556-7893
Fax: 646-428-6149
E-mail: hayestl@nytimes.com

November 20, 2008

Douglas Panattieri, Jr.
President
Newspaper & Mail Deliverers' Union of New York & Vicinity
24-16 Queens Plaza South - Room 306
Long Island City, NY 11101

Dear Mr. Panattieri :

This confirms our understanding that papers will be loaded on to trucks at College Point only by bargaining unit employees, and that such trucks will be driven only by bargaining unit employees from the loading dock to any other location or transfer point the Times designates, provided that the performance of such work will not affect the established running time of any bargaining unit employees. Nothing herein alters the Times rights under Section 3.D.1.

Sincerely,

Terry L. Hayes

**AGREED TO:**

Douglas Panattieri, Jr.

**The New York Times**
620 EIGHTH AVENUE
NEW YORK, N.Y. 10018

TERRY L. HAYES
Vice President
Labor Relations

Tel: 212 556-7893
Fax: 646-428-6149
E-mail: hayestl@nytimes.com

November 20, 2008

Douglas Panattieri, Jr.
President
Newspaper and Mail Deliverers' Union
 of New York and Vicinity
24-16 Queens Plaza South, Room 306
Long Island City, NY 11101

Dear Mr. Panattieri:

This confirms our understanding that the term "seniority," when used in this Closing Agreement, refers to industry-wide priority. This definition of "seniority" is intended to apply only to the Closing Agreement and is not to have any precedential effect for either party in the future.

Very truly yours,

Terry L. Hayes

Agreed:

Douglas Panattieri

**The New York Times**
620 EIGHTH AVENUE
NEW YORK, N.Y. 10018

TERRY L. HAYES
Vice President
Labor Relations

Tel:  212 556-7893
Fax:  646-428-6149
E-mail: hayestl@nytimes.com

November 20, 2008

Douglas Panattieri, Jr.
President
Newspaper and Mail Deliverers' Union
 of New York and Vicinity
24-16 Queens Plaza South, Room 306
Long Island City, NY 11101

Dear Mr. Panattieri:

This confirms our understanding that notwithstanding the fact that they are not "active" within the meaning of the Closing Agreement, the following individuals shall be considered eligible for a buyout or severance pursuant to the terms of that Agreement.  If any of these individuals are granted buyouts pursuant to paragraph 4, they shall count toward the company's 140 person maximum buyout obligation set forth in paragraph 4(a).

1.  Keith Aguiar
2.  Michael Amorose
3.  Thomas Carter, Jr.
4.  Gerald Chiari
5.  Mark Cohen
6.  Patrick Dalessio
7.  Cory Johnson
8.  David Luna
9.  Gim Ngai
10. Steven Piparo
11. Brett Steiger
12. Vincent Yodice

Very truly yours,

Terry L. Hayes

Agreed:

Douglas Panattieri

1347/55553-289 Current/12542584v1

11/17/2008 12:16 PM

## The New York Times
620 EIGHTH AVENUE
NEW YORK, N.Y. 10018

TERRY L. HAYES
Vice President
Labor Relations

Tel: 212 556-7893
Fax: 646-428-6149
E-mail: hayestl@nytimes.com

November 20, 2008

Douglas Panattieri, Jr.
President
Newspaper and Mail Deliverers' Union
of New York and Vicinity
24-16 Queens Plaza South, Room 306
Long Island City, NY 11101

Dear Mr. Panattieri:

This confirms our understanding that neither the New York Times nor C&S will challenge or object to the unemployment insurance application of any NMDU-represented C&S employee who becomes unemployed as a result of the closure of C&S, even if such employee receives a buyout or severance payment.

Very truly yours,

Terry L. Hayes

Agreed:

Douglas Panattieri

**The New York Times**
620 EIGHTH AVENUE
NEW YORK, N.Y. 10018

TERRY L. HAYES
Vice President
Labor Relations

Tel:  212 556-7893
Fax:  646-428-6149
E-mail: hayestl@nytimes.com

November 20, 2008

Douglas Panattieri, Jr.
President
Newspaper & Mail Deliverers' Union of New York & Vicinity
24-16 Queens Plaza South - Room 306
Long Island City, NY  11101

Dear Douglas:

This confirms our understanding that C & S employees transferred to The Times pursuant to
paragraph 2 of our recent agreement shall have a "clean slate" for all employment purposes,
including but not limited to disciplinary matters.

Sincerely,

Terry L. Hayes

AGREED TO:

Douglas Panattieri, Jr.

**The New York Times**
620 EIGHTH AVENUE
NEW YORK, N.Y. 10018

TERRY L. HAYES
Vice President
Labor Relations

Tel:  212 556-7893
Fax:  646-428-6149
E-mail: hayestl@nytimes.com

November 20, 2008

Douglas Panattieri, Jr.
President
Newspaper & Mail Deliverers' Union of New York & Vicinity
24-16 Queens Plaza South - Room 306
Long Island City, NY  11101

Dear Douglas:

This confirms our understanding that within ten days following the effective date of this Agreement, the parties will establish a subcommittee to discuss the manner in which the work that is transferred from C & S shall be put up for bid.

Sincerely,

Terry L. Hayes

**AGREED TO:**

Douglas Panattieri, Jr.

# EXHIBIT A

| Last Name | First Name |
| --- | --- |
| Abbate | Richard |
| Acuna | Hernando |
| Adamski | Richard S. |
| Agnello | Roy |
| Alpizar | Carlos |
| Altieri | Daniel |
| Anderson | Luis |
| Andreotti | William |
| Antonaccio | Michael |
| Arena | Salvator J |
| Arenella | Anthony |
| Arias | Gerardo |
| Armagno | Louis |
| Arteaga, Sr. | Carlos A. |
| Arze | Jose |
| Atkins | Richard |
| Bane | Dale |
| Berni | Aaron |
| Berni | Alan |
| Bianca | Joseph |
| Biase | Philip C. |
| Bilotti | Barry L. |
| Bissonette | Michael |
| Boyd | William D. |
| Brenner | Barry |
| Brucato, Jr. | John |
| Buccine Jr. | Thomas E. |
| Budden | Michael K. |
| Buonocore | John J. |
| Burns | Joseph F. |
| Cafaro, Jr. | Ralph P. |
| Calchi | John |
| Cantalupo | Matt |
| Caporale | Frank |
| Caravella | Robert A. |
| Carter | John S. |
| Casey | Peter |
| Cash, Jr. | William |
| Cassaro | John |
| Castro | Gilbert A. |
| Castro | Richard |

# EXHIBIT A

| Last Name | First Name |
|---|---|
| Cavallaro | James C |
| Cavallaro | Joseph |
| Cavallaro | Sam |
| Cavallaro | Stephen |
| Cellini | John M. |
| Cendales | Paul H. |
| Challacombe | Thomas |
| Chandler | Robert |
| Chasey | Michael D. |
| Chasey | Peter T. |
| Chasey, Jr. | Sidney |
| Chiciaza | Antonio |
| Cicenia | Joseph W. |
| Cimilluca | Phil |
| Ciminelli | Alan |
| Cittadino | Frank |
| Civadanes | Paul |
| Clayburn | Dennis C |
| Clougher | Thomas E. |
| Coccaro | Robert |
| Connell | Kerry |
| Connell | Kim(tammy) |
| Conover | Roger |
| Cooper, Jr. | George |
| Corea | Steven |
| Coscia, Jr. | Dominick |
| Crawford | Jay |
| Criss | Barry |
| Cussanelli | Carl |
| D'Agostino | James |
| Dailey, Jr. | Richard |
| Dampman | Joseph F. |
| Darling | Jeffrey |
| Davis | James G. |
| De La Cruz | Roberto |
| Deegan | Richard |
| Deleon | Israel |
| DeMarzo | Keith |
| DeMarzo 3rd. | Ernest |
| Diamond | Barry |
| Diglio | Chris |
| Dimick | Thomas |

2

# EXHIBIT A

| Last Name | First Name |
|---|---|
| Dipaolo | Thomas |
| Dolph | Richard |
| Dundon | James G. |
| Dungey | James |
| Dungey | Stuart |
| Dunleavy | Michael |
| Dunn | Douglas |
| Dunn | Edward W. |
| Elliott | James N. |
| Estok | Brian |
| Estok | Joe |
| Estrella | Lincoln R. |
| Fabiani | Chris |
| Fahreddine | Munir |
| Feinberg | Robert |
| Fernandes | Anthony |
| Ferrizz | Francis |
| Festo | William |
| Finn | Donald T. |
| Firestone | Joel |
| Fitzpatrick, Jr. | John J. |
| Fitzpatrick, Jr. | William C. |
| Fitzpatrick, Sr. | William |
| Flores | Michael |
| Floyd | Lee C. |
| Franco | Paul |
| Freschi | Fred |
| Friedrich | Charles H. |
| Gaches | Andre |
| Galife | John |
| Gallagher | Robert J. |
| Garcia | Peter H. |
| Gatti | Fred |
| Gaul | Richard |
| Gibson | Larry |
| Gilberti | Salvatore |
| Gioia | Salvatore |
| Giordano | Joseph |
| Godfrey | Robert |
| Gojani | Djevalin |
| Goldberg | Jeffrey |
| Gomez | Louis |

3

# EXHIBIT A

| Last Name | First Name |
| --- | --- |
| Goncalves | Arthur |
| Gorra | Louis M. |
| Grados | Enrique |
| Granada | Gonzalo |
| Granado | Rinaldo |
| Grassi | Anthony |
| Greer | Tyrone C. |
| Gruol | Gregory |
| Grzunov | Joseph |
| Guidetti | Robert |
| Hart | James |
| Harty Ii | Gary N. |
| Healey | Brian W. |
| Heaney | Steve |
| Hernandez | Luis F. |
| Holbrook, Jr. | Harold |
| Holm | Thomas |
| Holt | Tyrone |
| Hughes | Mark |
| Hulette | Jesse |
| Hyslop | Kevin |
| Iacone | Nickolas |
| Isom | Kenneth |
| Jackson | Harold |
| Jackson | Luther C. |
| Jackson | Sammy |
| Jacobson | John Scott |
| Johnson | Eric |
| Jones | Franklin |
| Jordan | Reynold |
| Kadeer | Abdul |
| Kelly | Robert W. |
| Kelly , Jr. | Robert |
| Khoury | Elias |
| Klamkin | Gary |
| Koflowitch | Ira |
| Kolodziej | Peter |
| Kouvel | Charles J. |
| Kovacs | Gregory |
| Kreusch | Richard |
| Lam | Steve S. |
| Laplaca Jr. | Vincent A. |

4

# EXHIBIT A

| Last Name | First Name |
| --- | --- |
| Lardieri | Joseph G. |
| Large | Scott A. |
| Larocca | Robert |
| Larusso | James V. |
| Lasher | Andrew |
| Latham | Albert J. |
| Laveroni | Todd |
| Layton | Stephen |
| Lee | George |
| Lee | James |
| Lemanski | Mark F. |
| Lentchner | David J. |
| Levy | Robert |
| Lipari | Russell |
| Liseski, Sr. | Joseph W. |
| Liu | Ken |
| Lobosco | James |
| Lodespoto | John J. |
| Loftus | Josh D. |
| Loftus, Jr. | William |
| Lopez | Miguel A. |
| Lopez | Nelson |
| Lotze | Eric |
| Lubischer | William |
| Lusk, Jr. | John |
| Lyden | Kevin M. |
| Lynaugh | Peter |
| Maikranz | Robert |
| Malizia | Anthony |
| Mangino | Richard |
| Maniscalco | Michael |
| Many | Charles |
| Marin | Hector |
| Marrero | Carlos E. |
| Martinelli | Angelo |
| Mask | John |
| Matthews | Edward J. |
| Matthews | Glenn J. |
| Matthews, Jr. | James H. |
| Maya | Miguel A. |
| Mayer | Todd |
| Mccreay | James |

# EXHIBIT A

| Last Name | First Name |
|---|---|
| Mcdonald | Edward |
| Mcguire | Alan R. |
| Mclaughlin | James F. |
| McLaughlin | John G. |
| Mcleggon | Delroy |
| Mcmahon | Drew |
| Mcmickle | Robert |
| Meany Jr. | Thomas J. |
| Mele | Louis |
| Meltzer | Robert |
| Menadier | Francis J. |
| Merkling | Robert |
| Micioni | Louis A. |
| Miles | Willie |
| Miller | Derrick |
| Miller | Kenneth |
| Miller | Stanley |
| Miller Jr. | Gregory J. |
| Mink | Robert |
| Miranda | Felix |
| Monte | Joseph A. |
| Morales | Raymond |
| Moran | Raimond M. |
| Mozolie | Ron |
| Munn | Aundrey |
| Munn | Charlene |
| Murphy | Timothy |
| Murray | Michael |
| Murray | Robert |
| Murray | Sean T. |
| Muscara | Frank |
| Naclerio | Joseph |
| Naclerio | Stephan |
| Nazario | Victor |
| Ng | Careem F. |
| Nitopi | William |
| Norton | John |
| Nunnenkemp | Robert |
| O'Malley | Michael |
| O'Neil | Henry |
| Ottomanelli | Jerry |
| Padavano | Paul |

# EXHIBIT A

| Last Name | First Name |
| --- | --- |
| Padovano | Peter |
| Padovano | Peter J. |
| Palagonia | Sal |
| Palette | Cary |
| Pampinella | Philip |
| Paniagua | Elliott |
| Pape | George H. |
| Parada | Zbigniew |
| Pardo | Jaime J. |
| Pepe | Anthony |
| Perez | Frank |
| Piazza | Vincent |
| Pilchuk | Michael |
| Pinerio | Robert W. |
| Pinto, Jr. | Joseph |
| Plantemoni | Joseph |
| Plenkers | Scott |
| Pugliese | Pasquale A |
| Puglisi | Phillip |
| Puser | Robert L. |
| Rafferty | Eugene |
| Raffone, Jr. | Louis |
| Ralph | David |
| Rawa Jr. | John |
| Ray | J. Kenneth |
| Ray | Michael J. |
| Rello | Thomas F. |
| Repole, Jr. | Anthony |
| Restrepo | John |
| Rivera | John |
| Rizzotti | Patrick |
| Rodriguez | Marco |
| Roll | Robert |
| Rosania Jr. | Nicholas G |
| Ross | Robert |
| Ruglio | Alphonso |
| Ruiz | Jesus |
| Ruvolo | Robert |
| Sabia | John |
| Sacheli | Charles |
| Sacripanti  Jr. | Matthew |
| Saintlouis | Wilfred |

# EXHIBIT A

| Last Name | First Name |
|---|---|
| Salicos | James |
| Salvage | Gregory |
| Sandoval | Louis |
| Sanfilippo | Daniel |
| Santos | Rui P. |
| Sarrubbo | Gennaro |
| Scannelli | Raymond |
| Scelza | David |
| Schaal | Joseph F. |
| Schindel | Gary |
| Schneider | Norman |
| Schortemeyer | Alan |
| Schriever | Craig |
| Schwartz | John J. |
| Sciandria | Thomas |
| Segur | Thomas |
| Severo | Frank |
| Sherman | Anthony D. |
| Sherman | Joseph W. |
| Sherman | Michael C. |
| Sherman | Robert |
| Sherman | Vincent W. |
| Sherman | William |
| Shields | Michael |
| Shields Jr. | John C. |
| Shimonis | Joseph R. |
| Sierra | David |
| Simonetti | Jesse |
| Singh | Narine |
| Slater | James |
| Slicner | Michael |
| Smeriglio | Joseph E. |
| Sokol | Barry |
| Sorensen | Frederick |
| Soto, Jr. | Manuel |
| Speciale | Louis |
| Speciale | Michael |
| Starr | Mike |
| Stedman | Kenneth |
| Stefanelli | Ralph |
| Stempel | Mark M. |
| Teart | Willie |

# EXHIBIT A

| Last Name | First Name |
|-----------|------------|
| Testagrose | Anthony P. |
| Testagrose | Frank |
| Testagrose | Joseph M. |
| Testagrose, Jr. | Thomas |
| Tesyajantorn | Ayuthaya |
| Thomas | Gregory |
| Thomas | Jeffrey |
| Thomas | Peter |
| Tinney | Brian N. |
| Traore | Modibo |
| Traynor | Robert |
| Treistman | Donald |
| Tucciarone | Raymond |
| Urena | Juan I. |
| Valentin | Edward |
| Valentine | James T. |
| Vandyne | Richard |
| Velardo | Richard F. |
| Velardo,Jr. | Arthur B. |
| Venturino | Edward |
| Verlin | Ronald |
| Verlin | William |
| Vinceslio | Carl |
| Vulpis | Jonathan |
| Walker | Michael |
| Walker Jr. | Nathaniel |
| Waters | Bryan |
| Watson, Jr. | Joseph M. |
| Weldon | Casey |
| Williams | Robert R. |
| Wingo | Ronald |
| Yammime | George |
| Zarrella | Michael |
| Zumpano Jr. | Anthony |

# EXHIBIT B

| Last Name | First Name |
|---|---|
| Aguirre | Ramon |
| Banfi | Joseph |
| Barrera | Robert |
| Bartholomew | Thomas |
| Bayak | Patrick |
| Bell | Kyle |
| Bond | William |
| Bradley | Nicholas |
| Brady | Scott |
| Brenner | Scott M. |
| Caballero | Luis |
| Cantalupo | Glen |
| Cash III | William |
| Chasey | Michael P |
| Christian | Kevin |
| Christo Jr. | Thomas |
| Cittadino | Robert |
| Clark | James |
| Diaz | Robert |
| DiPierno | Gabriel |
| Doherty | Timothy |
| Dottavio | Nicholas |
| Dunn | John |
| Egan | Perry |
| Feinberg Jr | Robert |
| Fey | Dennis |
| Gojani | Robert |
| Grados | Julio |
| Hulette | Chris |
| Hunter | Charlie |
| Infranco | Andrew |
| King | Pearly |
| Layton | Jason |
| Loftus | Keith |
| Maroulakis | Paraskevas |
| Mazza | John |
| Medina | Raxon |
| Melanson | Brad |
| Mendoza | Hector M. |
| Monte | Paul |
| Monteleone | Lawrence |

# EXHIBIT B

| Last Name | First Name |
|-----------|------------|
| Nazro | Keith |
| Norris | James |
| Oglesby | Erik |
| Olsen | Jeffrey |
| Petrov | Jon |
| Pinilla | Jason |
| Prelli | Michael |
| Ramos | David |
| Ramos  Jr | Marcelino |
| Ray | Christopher |
| Recca | Frank |
| Rego | Michael |
| Reis | Rui |
| Salamone | Joseph |
| Schindel | David |
| Sheldrick | Christopher |
| Smyth Jr. | John |
| Surujbali | Chet |
| Villani | Vincent |
| Viteri | Cesar |
| Vulpis | Daniel |
| Wingo | Matthew |
| Yodice | Thomas |

SETTLEMENT OF GRIEVANCE/FOUR MAN BOARD AWARD
BETWEEN THE NEW YORK TIMES, CITY AND SUBURBAN
AND THE NEWSPAPER AND MAIL DELIVERERS' UNION

WHEREAS, on September 8, 2008 The New York Times ("The Times")
announced that it would be closing City and Suburban ("C&S"); and

WHEREAS, the New York Times offered to meet and bargain with The
Newspaper and Mail Deliverers' Union of New York City and Vicinity (the "NMDU")
over the effects of the closing on the union and its members; and

WHEREAS, the NMDU objected to The Times' decision to close C&S; and

WHEREAS, on September 18, 2008, October 3, 2008 and October 17, 2008, the
NMDU filed grievances alleging that The Times and C&S violated both The New York
Times and C&S collective bargaining agreements with the NMDU; and

WHEREAS, the parties were committed to reaching an amicable resolution of
their disputes and spent many hours and met on numerous occasions between September
8, 2008 and November 14, 2008, in an effort to resolve the Union's grievances; and

WHEREAS, the parties reached agreement on the terms of a settlement between
The Times, C&S and the NMDU in connection with the closing of C&S and the transfer
of certain work from C&S to The Times (the "Closing Agreement") and as part of that
settlement agreed to resolve the pending grievances;

NOW THEREFORE, the parties agree as follows:

1.      The Times recognizes that the NMDU has incurred and will continue
        to incur extraordinary administrative expenses as a result of the
        closing of C&S and the administration of the Closing Agreement.
        As settlement of the grievances filed by the NMDU against the
        Times and C&S concerning the closing of C&S, the Times shall
        make a payment to the Union in the amount of $150,000.00 to defray
        a portion of these administrative expenses.

2.      The parties acknowledge and agree that the payment described in
        paragraph 1 above shall not set a precedent for any future settlement
        between The Times and the NMDU and that the payment here
        reflects the extraordinary significance to the parties of the issues
        related to the closing of C&S, the complexity of the financial, legal
        and administrative issues involved, and the magnitude of the
        professional fees that NMDU has had to bear in its efforts to
        properly and diligently represent the bargaining unit employees
        affected by the closing.

This Agreement is subject to and shall not become effective until after the Closing Agreement is ratified.

IN WITNESS WHEREOF, the parties have caused their duly authorized representatives to execute this Agreement reached on November 20, 2008.

NEWSPAPER AND MAIL DELIVERERS' UNION
OF NEW YORK AND VICINITY

_Douglas Pomattun Jr_

Dated: _November 24, 2008_

V.P. _James Delllazo_

Sec-Tres _Steven Silverstein_

B.A _R. _____

B.A _____

THE NEW YORK TIMES

_Terry D. ____

Dated: November 20, 2008

CITY & SUBURBAN

_John Daly_

Dated: November 20, 2008

EX. 3

CITY AND SUBURBAN DELIVERY SYSTEMS, INC.

JANUARY 2009 SEVERANCE PAY PLAN

FOR ELIGIBLE EMPLOYEES REPRESENTED BY

THE NEWSPAPER AND MAIL DELIVERERS'

UNION OF NEW YORK AND VICINITY

## TABLE OF CONTENTS

Page

ARTICLE I - INTRODUCTION .................................................................... 1

ARTICLE II - DEFINITIONS AND INTERPRETATIONS ................................... 1

    1.     Agreement.............................................................................1
    2.     Effective Date ......................................................................1
    3.     Eligible Employee.................................................................1
    4.     Employer.............................................................................1
    5.     Group 1 Participant..............................................................1
    6.     RSH Participant ...................................................................2
    7.     Plan Administrator ...............................................................2
    8.     Closing ...............................................................................2
    9.     Separation Date....................................................................2
    10.   Week of Base Pay ................................................................2
    11.   Welfare Fund ......................................................................2

ARTICLE III - HOW DO I BECOME A PARTICIPANT? ................................... 2

ARTICLE IV - WHAT BENEFITS WILL I RECEIVE? ..................................... 3

    A.    RSH Participants...................................................................3
         1.     Buyout Option..........................................................4
         2.     Basic Severance Option .............................................4
    B.    Group 1 Participants .............................................................4
    C.    Offset.................................................................................4

ARTICLE V - WHEN AND HOW WILL MY BENEFITS BE PAID? ................... 5

    1.     One Payment.......................................................................5
    2.     Survivor Benefits .................................................................5

ARTICLE VI - MISCELLANEOUS ............................................................... 5

    1.     Amendment and Termination ..................................................5
    2.     Plan Administration and Interpretation.....................................6
    3.     No Additional Rights Created..................................................6
    4.     Records ..............................................................................6
    5.     Construction........................................................................6
    6.     Unenforceability ..................................................................6
    7.     Incompetency ......................................................................6
    8.     Plan Not a Contract of Employment.........................................7
    9.     Financing............................................................................7
    10.   Nontransferability ................................................................7

11. Indemnification ..........................................................................................................7

**ARTICLE VII - WHAT ELSE DO I NEED TO KNOW ABOUT THE PLAN?**...................7

1. Claims Procedure ..............................................................................................7
2. Your Rights Under ERISA .................................................................................8
3. Plan Document.................................................................................................10
4. Other Important Facts. .....................................................................................10

## ARTICLE I - INTRODUCTION

City & Suburban Delivery Systems, Inc. (the "Employer") hereby establishes The City And Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan For Eligible Employees Represented By The Newspaper And Mail Deliverers' Union Of New York And Vicinity (the "Plan"), effective as of December 10, 2008. The Plan is intended to fall within the definition of an employee welfare benefit plan under Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

All rights of Participants to benefits relating to this severance program shall be governed by the signed Agreement and the Plan. In the event that the terms of the Plan are inconsistent with other documents or other written or verbal communications provided by the Employer or its representatives with respect to this severance program, the terms of the Plan shall govern. The terms of this Plan may only be modified by a formal Plan amendment.

## ARTICLE II - DEFINITIONS AND INTERPRETATIONS

The following definitions and interpretations of important terms apply to the Plan.

1. Agreement. The Agreement and General Release, provided by the Employer under which the Participant releases the Employer and its affiliates, subdivisions, successors and assigns from liability for any and all claims.

2. Effective Date. The Effective Date of the Plan is December 10, 2008.

3. Eligible Employee. Any employee of the Employer listed in Appendix A or Appendix B to this Plan.

Notwithstanding the foregoing, an Eligible Employee shall not include any individual (i) classified on the books of the Employer as an independent contractor and not as an employee at the time of any determination, (ii) being paid by or through an employee leasing company or other third party agency, (iii) classified on the books of the Employer as a freelance worker and not as an employee at the time of any determination, (iv) classified by the Employer as a seasonal, occasional or temporary employee, during the period the individual is so paid or classified, except for those who are classified by the Employer as Group 1 Employees, or (v) classified by the Employer as a leased employee, during the period the individual is so paid or classified; any such individual shall not be an Eligible Employee even if he or she is later retroactively reclassified as a common-law employee of the Employer during all or any part of such period pursuant to applicable law or otherwise.

4. Employer. City & Suburban Delivery Systems, Inc.

5. Group 1 Participant. An Eligible Employee classified by the Employer as a Group 1 Employee who meets all of the criteria to become a Participant set forth in Article III below.

6.   RSH Participant.   An Eligible Employee classified by the Employer as a Regular Situation Holder who meets all of the criteria to become a Participant set forth in Article III below.

7.   Plan Administrator.   The New York Times Company or such other person or committee appointed from time to time by The New York Times Company to administer the Plan. Until such time as a successor is named, The New York Times Company has designated, the Director, Corporate Benefits of The New York Times Company, to act on behalf of the Plan Administrator with respect to the Plan.

8.   Closing.   The cessation of operations by the Employer taking place on or about January 4, 2009.

9.   Separation Date.   The date designated by the Employer for the termination of employment of an eligible employee. The Employer may change a previously designated Separation Date, in its sole and absolute discretion.

10.   Week of Base Pay.   The Participant's weekly base salary, as reflected in the Employer's Human Resources records as of the Separation Date and shall exclude wage diversions, bonuses, overtime, shift differential and incentives. However, weekly Base Salary will include salary reduction contributions made on an Employee's behalf to any plan of the Employer under Section 125, 132(f) or 401(k) of the Internal Revenue Code of 1986, as amended.

11. Welfare Fund.   Newspaper and Mail Delivers' Union Health and Welfare Fund.

## ARTICLE III - HOW DO I BECOME A PARTICIPANT?

You may apply to receive benefits under the Plan (i.e., to become a "Participant") by satisfying all of the requirements set forth below:

1.      you are an Eligible Employee on the Effective Date;

2.      you elect (in the manner established by the Employer) between December 10, 2008 and the later of January 26, 2009 or 45 days after your receive the Agreement (or such other dates as specified in writing by the Employer) to separate from employment with severance benefits as of your Separation Date, and you terminate Employment on your Separation Date as a result of the Closing;

3.      you remain in the continuous employ of the Employer as an Eligible Employee through your Separation Date, subject to the standards of satisfactory job performance;

4.      your signed, dated and notarized Agreement is received by Chris Biegner, Director, Human Resources & Labor Relations, City & Suburban Delivery Systems, Inc., 1111 Marcus Avenue, Suite M21, Lake Success, NY 11042, fax number: (516) 302-2124, on or after

2

5:00 p.m. on your Separation Date, or if later, 45 days after you receive the Agreement (or such other date as specified in writing by the Employer), but in no event before 5:00 p.m. January 4, 2009;

     5.     Mr. Biegner does not receive (at the address above) within seven (7) days after you execute the Agreement your election in writing to revoke the Agreement;

     6.     you comply with all the terms of the Agreement;

     7.     you do not obtain employment with The Times; and

     8.     you submit to a medical exam directed by C&S (payment of the severance pay will not be contingent on the results of the medical exam).

Notwithstanding your compliance with the requirements stated above, if you are an RSH, you will not participate in the Plan if you select the Buyout Option but are not eligible for the Buyout Option based on your seniority and have not selected the Basic Severance Option as an alternative to the Buyout Option.

If you are an Eligible Employee who accepted an offer from the Employer to terminate employment with the Employer with severance, you will not become a Participant unless and until that election to participate is accepted by the Employer. Notwithstanding your request to participate in the Plan by satisfying each item described in (1) through (8), above, the Employer reserves to itself the right in its sole and absolute discretion to determine whether or not you will become a Participant in the Plan. Thus, the Employer may (i) accept your request to participate in the Plan; (ii) accept your request to participate, but request that you defer your separation from employment until a later Separation Date; or (iii) reject your request to participate in the Plan. If you are an Eligible Employee described in this paragraph, the Employer will notify you whether your application for participation is accepted or rejected in writing promptly after the decision has been made, and if you do not receive such notice, you will not become a Participant in the Plan. If you are selected for participation, you will terminate employment as of your Separation Date.

Should you at any time be offered employment with the New York Times Company, you must return any and all severance payments received pursuant to this Plan prior to accepting such employment.

## ARTICLE IV - WHAT BENEFITS WILL I RECEIVE?

The benefits you will receive will depend on your employment status, seniority, the selection you have made, and the selections other employees have made.

A.     <u>RSH Participants</u>. Based on the above criteria, RSH Participants will receive either of the following benefits:

3

1.  Buyout Option.

140 RSH Participants (in seniority order) who elected the Buyout Option and are informed by the Employer that they have been selected to receive the Buyout Option will receive:

    (1)  A one-time, lump sum severance payment of $100,000 (minus applicable taxes and withholdings); and

    (2)  Continuation of contributions to the Welfare Fund on the RSH Participant's behalf in accordance with the following terms:

        (i)  If, on January 1, 2009, the RSH Participant is 65 years old or older, then annual contributions of $1,431 will be made on his/her behalf to the Welfare Fund for 2009, 2010, and 2011.

        (ii)  If, on January 1, 2009, the RSH Participant is (1) eligible for a pension through the Newspaper and Mail Deliverer's – Publisher's Pension Fund under the "Rule of 90" (i.e., RSH Participant's age plus years of service is equal or greater to 90) and (2) not yet 65 years old, then annual contributions of $8,427 will be made on his/her behalf to the Welfare Fund for 2009, 2010, and 2011, and then contributions totaling $4,213.50 will be made on Employee's behalf for 2012.

        (iii)  If RSH Participant does not meet the criteria of (i) or (ii) above, then contributions totaling $11,001 will be made on his/her behalf to the Welfare Fund for 2009.

2.  Basic Severance Option.

If a RSH Participant did not choose the Buyout Option, or if a RSH Participant did not meet the eligibility requirements for the Buyout Option based on his or her seniority but elected the basic Severance Option as an alternative, then a RSH Participant will receive the Basic Severance Option. The Basic Severance Option for RSH's includes the payment of eight (8) weeks of Base Pay (minus applicable taxes and withholdings) and contributions totaling $11,001 to the Welfare Fund on his or her behalf for 2009.

B.  Group 1 Participants. Group 1 Participants will be entitled to receive a payment of four (4) weeks of Base Pay (minus applicable taxes and withholdings) and contributions totaling $11,001 to the Welfare Fund on his or her behalf for 2009.

C.  Offset. If you are an Eligible Employee or you terminate employment in connection with the Closing, you are not eligible to receive any other severance, separation or termination payments on account of your employment with the Employer under any other plan, policy, program or agreement (including, without limitation, severance pay pursuant to paragraph 13.B of the NMDU/C&S collective bargaining agreement, any other contract

4

or agreement).

If, for any reason, you are entitled to any other severance, separation or termination payment, your benefit under the Plan will be reduced by the amount of such other severance, separation or termination payments paid or payable to you on account of your employment with the Employer, including, for example, any payments required to be paid to you under any Federal, State or local law or pursuant to any agreement. You must notify the Plan Administrator if you receive or are claiming to be entitled to receive any such payment(s).

However, your benefits under the Plan will not be reduced by the amount of your accrued, but unpaid, holiday, vacation and compensatory time that you will receive in connection with your termination of employment from the Employer.

## ARTICLE V - WHEN AND HOW WILL MY BENEFITS BE PAID?

1. <u>One Payment</u>. Your severance pay will be paid to you in a single lump sum within thirty (30) days of the Employer's receipt of a signed Agreement or the medical exam required to become a Participant, whichever occurs later. Notwithstanding the foregoing and regardless of which severance option is selected, for purposes of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), in the event your total severance payments are greater than two times your 2008 base salary, then such severance payments shall be made no later than March 15, 2009.

Please note that all amounts payable under the Plan are subject to legally required withholding.

To the fullest extent applicable, severance benefits payable under the Plan are intended to be exempt from the definition of "nonqualified deferred compensation" under Section 409A in accordance with one or more of the exemptions available under the final Treasury regulations promulgated under Section 409A and, to the extent that any such amount or benefit is or becomes subject to Section 409A due to a failure to qualify for an exemption from the definition of nonqualified deferred compensation in accordance with such final Treasury regulations, the Plan is intended to comply with the applicable requirements of Section 409A with respect to such amounts or benefits. The Plan shall be interpreted and administered to the extent possible in a manner consistent with the foregoing statement of intent.

2. <u>Survivor Benefits</u>. If you die prior to the date you are notified in writing that you have been accepted for Plan participation, you will not become a Participant and no benefits shall be payable under this Plan on your behalf.

## ARTICLE VI - MISCELLANEOUS

1. <u>Amendment and Termination</u>. The ERISA Management Committee of The New York Times Company shall have the right, in its sole and absolute discretion, to terminate, amend or modify the Plan, in whole or in part, at any time and for any reason by a written

resolution approving any such action. If the Plan is terminated, amended or modified, your right to participate in, or to receive benefits under, the Plan may be changed.

2. <u>Plan Administration and Interpretation</u>. The Plan is administered and operated by the Plan Administrator, who (along with its duly authorized designees, including, without limitation, the ERISA Management Committee of The New York Times Company) has complete authority, in its sole and absolute discretion, to construe the terms of the Plan (and any related or underlying documents or policies), and to determine the eligibility for, and amount of, benefits due under the Plan to Participants. All such interpretations and determinations (whether legal or factual) of the Plan Administrator (along with its duly authorized designees, including, without limitation, the ERISA Management Committee of The New York Times Company) shall be final and binding upon all parties and persons affected thereby. The Plan Administrator may appoint one or more individuals and delegate such of its powers and duties as it deems desirable to any such individual(s), in which case every reference herein made to the Plan Administrator shall be deemed to mean or include the appointed individual(s) as to matters within their jurisdiction.

3. <u>No Additional Rights Created</u>. Neither the establishment of this Plan, nor any modification thereof, nor the payment of any benefits hereunder, shall be construed as giving to any Participant, Eligible Employee or other person any legal or equitable right against the Employer or parent or other affiliate thereof, or any officer, director or employee of either of them; and in no event shall the terms and conditions of employment by the Employer of any Eligible Employee be modified or in any way affected by this Plan.

4. <u>Records</u>. The Human Resources records of the Employer with respect to Years of Service, Weekly Base Salary, employment history, earnings, absences, and all other relevant matters shall be conclusive for all purposes of this Plan.

5. <u>Construction</u>. The respective terms and provisions of the Plan shall be construed, whenever possible, to be in conformity with the requirements of ERISA, or any subsequent laws or amendments thereto. To the extent not in conflict with the preceding sentence, the construction and administration of the Plan shall be in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York (without reference to its conflicts of law provisions).

6. <u>Unenforceability</u>. If, at any time after the date of the effective date of the Agreement, any provision of the Plan or the Agreement shall be held by any court of competent jurisdiction to be illegal, void, or unenforceable, such provision shall be of no force and effect. The illegality or unenforceability of such provision, however, shall have no effect upon, and shall not impair the enforceability of, any other provision of the Plan or the Agreement.

7. <u>Incompetency</u>. In the event that the Plan Administrator finds that a Participant is unable to care for his or her affairs because of illness or accident, then benefits payable hereunder, unless claim has been made therefor by a duly appointed guardian, committee, or other legal representative, may be paid in such manner as the Plan Administrator shall determine, and the application thereof shall be a complete discharge of all liability for any

6

payments or benefits to which such Participant was or would have been otherwise entitled under this Plan.

   8. Plan Not a Contract of Employment. Nothing contained in this Plan shall be held or construed to create any liability upon the Employer or its parent or other affiliates to retain any Eligible Employee or other individual in its service. All Eligible Employees shall remain subject to discharge or discipline to the same extent as if the Plan had not been put into effect. An individual who receives or is entitled to receive separation pay or other benefits under this Plan shall not be considered an employee of the Employer as of the Separation Date.

   9. Financing. The benefits payable under this Plan shall be paid out of the general assets of the Employer. No Participant hereunder shall have any interest whatsoever in any specific asset of the Employer. To the extent that any person acquires a right to receive payments under this Plan, such right shall not be secured by any assets of the Employer.

   10. Nontransferability. In no event shall the Employer make any payment under this Plan to any assignee or creditor of a Participant or eligible dependent, except as otherwise required by law. Prior to the time of a payment hereunder, a Participant shall have no rights by way of anticipation or otherwise to assign or otherwise dispose of any interest under this Plan, nor shall rights be assigned or transferred by operation of law.

   11. Indemnification. To the extent permitted by law, the Plan Administrator and all agents and representatives of it shall be indemnified by the Employer and saved harmless against any claims and the expenses of defending against such claims, resulting from any action or conduct relating to the administration of the Plan, except claims arising from gross negligence, willful neglect or willful misconduct.

## ARTICLE VII - WHAT ELSE DO I NEED TO KNOW ABOUT THE PLAN?

   1. Claims Procedure. If you are a Participant in the Plan, you will automatically receive the benefits set forth under the Plan. If you feel you have not been provided with all benefits to which you are entitled under the Plan, you may file a written claim with the Plan Administrator with respect to your rights to receive benefits from the Plan. You will be informed of the decision of the Plan Administrator with respect to the claim within 90 days after it is filed. Under special circumstances, the Plan Administrator may require an additional period of not more than 90 days to review a claim. If that happens, you will receive a written notice of that fact, which will also indicate the special circumstances requiring the extension of time and the date by which the Plan Administrator expects to make a determination with respect to the claim. If the extension is required due to your failure to submit information necessary to decide the claim, the period for making the determination will be tolled from the date on which the extension notice is sent until the date on which you respond to the Plan's request for information.

   If a claim is denied in whole or in part, or any adverse benefit determination is made with respect to the claim, you will be provided with a written notice setting forth the reason for the determination, along with specific references to Plan provisions on which the determination is based. This notice will also provide an explanation of what additional information is needed to evaluate the claim (and why such information is necessary), together

7

with an explanation of the Plan's claims review procedure and the time limits applicable to such procedure, as well as a statement of your right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review. If you are not notified (of the denial or an extension) within ninety (90) days from the date you notify the Plan Administrator, you may request a review of the application as if the claim had been denied.

If your claim has been denied, or an adverse benefit determination has been made, you may request that the ERISA Management Committee of The New York Times Company (to whom the Plan Administrator has delegated this responsibility) review the denial. The request must be in writing and must be made within sixty (60) days after written notification of denial. In connection with this request, you (or your duly authorized representative) may (i) be provided, upon written request and free of charge, with reasonable access to (and copies of) all documents, records, and other information relevant to the claim; and (ii) submit to the ERISA Management Committee written comments, documents, records, and other information related to the claim.

The review by the ERISA Management Committee of The New York Times Company will take into account all comments, documents, records, and other information you submit relating to the claim. The ERISA Management Committee will make a final written decision on a claim review, in most cases within sixty (60) days after receipt of a request for a review. In some cases, the claim may take more time to review, and an additional processing period of up to sixty (60) days may be required. If that happens, you will receive a written notice of that fact, which will also indicate the special circumstances requiring the extension of time and the date by which the ERISA Management Committee expects to make a determination with respect to the claim. If the extension is required due to your failure to submit information necessary to decide the claim, the period for making the determination will be tolled from the date on which the extension notice is sent to you until the date on which you respond to the Plan's request for information.

The ERISA Management Committee's decision on the claim for review will be communicated to you in writing. If an adverse benefit determination is made with respect to the claim, the notice will include (i) the specific reason(s) for any adverse benefit determination, with references to the specific Plan provisions on which the determination is based; (ii) a statement that you entitled to receive, upon request and free of charge, reasonable access to (and copies of) all documents, records and other information relevant to the claim; and (iii) a statement of your right to bring a civil action under Section 502(a) of ERISA. The decision of the ERISA Management Committee is final and binding on all parties. These procedures must be exhausted before a Participant may bring a legal action seeking payment of benefits.

2.   Your Rights Under ERISA.  As a participant in the Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). ERISA provides that all Plan participants shall be entitled to:

*Receive Information About Your Plan and Benefits*

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series), if any, filed by the Plan with the U.S.

8

Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts, and copies of the latest annual report (Form 5500 Series), if any, and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report (if any). The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

### Enforce Your Rights

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

### Assistance with Your Questions

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200

9

Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

      3. <u>Plan Document</u>. This document shall constitute both the plan document and summary plan description and shall be distributed to all Eligible Employees in this form.

      4. <u>Other Important Facts</u>.

| | |
|---|---|
| OFFICIAL NAME OF THE PLAN: | City & Suburban Delivery Systems, Inc. January 2009 Severance Pay Plan For Eligible Employees Represented By The Newspaper And Mail Deliverers' Union Of New York And Vicinity |
| SPONSOR: | City & Suburban Delivery Systems c/o The New York Times Company 620 Eighth Avenue New York, NY 10018 (516) 302-2500 |
| EMPLOYER IDENTIFICATION NUMBER (EIN): | 11-3310380 |
| PLAN NUMBER: | 727 |
| TYPE OF PLAN: | Employee Welfare Severance Benefit Plan |
| END OF PLAN YEAR: | December 31 |
| TYPE OF ADMINISTRATION: | Administered by the Plan Administrator |
| PLAN ADMINISTRATOR: | Executive Director, Corporate Benefits The New York Times Company 620 Eighth Avenue New York, NY 10018 (212) 556-1182 |
| EFFECTIVE DATE: | December 10, 2008 |

      The Plan Administrator keeps records of the Plan and is responsible for the administration of the Plan. The Plan Administrator will also answer any questions you may have about the Plan.

      Service of legal process may be made upon the Plan Administrator.

10

## APPENDIX A – Eligible Regular Situation Holders

Abbate, Richard J
Acuna, Hernando
Adamski, Richard S
Aguiar, Keith
Alpizar, Carlos A
Altieri, Daniel F
Amorose, Michael
Anderson, Luis B
Andreotti, William
Antonaccio, Michael
Arena, Salvatore J
Arenella, Anthony R
Arias, Gerardo D
Armagno, Luigi
Arteaga, Carlos
Arze, Jose
Atkins, Richard
Bane, Dale N
Berni, Aaron
Biase, Philip C
Bilotti, Barry
Bissonette, Michael
Brenner, Barry Z
Brucato, John P
Budden, Michael
Buonocore, John J
Burns, Joseph F
Cafaro Jr., Ralph P
Calchi, John
Cantalupo, Matthew
Caporale, Frank
Caravella, Robert A
Carter, John
Carter, Thomas
Casey, Peter J
Cash Jr., William
Castro, Richard R
Cavallaro, James C
Cavallaro, Joseph
Cavallaro, Sam
Cellini, John
Cendales, Paul H
Challacombe, Thomas
Chandler, Robert
Chasey, Michael D

Chasey, Peter T
Chiari, Gerard
Chicaiza, Antonio R
Cicenia, Joseph W
Cimilluca, Philip A
Ciminelli, Alan
Cittadino, Frank
Cividanes, Paul
Clayburn, Dennis
Clougher, Thomas E
Coccaro, Robert
Cohen, Mark
Connell, Kerry J
Connell, Kim J
Conover, Roger G
Corea, Steven
Coscia Jr., Dominick
Crawford, Jay M
Criss, Barry M
Cusanelli, Carl J
D'Agostino, James
Dailey Jr., Richard A
D'Alessio, Patrick
Dampman, Joseph
Darling, Jeffrey T
Davis, James G
De La Cruz, Roberto
Deegan, Richard J
DeLeon, Israel
DeMarzo III, Ernest
Demarzo, Keith
Diamond, Barry I
Diglio, Christopher
Dimick, Thomas E
Dipaolo, Thomas
Dolph, Richard
Dundon, James G
Dungey, James R
Dungey, Stuart W
Dunleavy, Michael
Dunn, Douglas
Dunn, Edward
Elliott, James N
Estok, Brian
Estrella, Lincoln

Feinberg, Robert G
Fernandes, Anthony
Ferrizz, Francis J
Festo, William D
Finn, Donald T
Firestone, Joel S
Fitzpatrick Jr., William
Fitzpatrick, John J
Fitzpatrick, William C
Flores, Michael A
Floyd, Lee
Franco, Paul J
Freschi, Fred R
Friedrich Jr., Charles H
Gaches, Andre
Garcia, Peter H
Gatti, Fred
Gaul, Richard A
Giordano, Joseph
Godfrey, Robert J
Gojani, Djevalin
Goldberg, Jeffrey
Gomez, Louis
Gorra, Louis
Grados, Enrique
Granada, Gonzalo
Granado, Rinaldo
Greer, Tyrone C
Gruol, Gregory
Grzunov, Joseph T
Guidetti, Robert F
Harty II, Gary
Healey, Brian
Heaney, Stephen
Henry, O'Neil A
Hernandez, Luis F
Holt, Tyrone
Hughes, Mark
Hulette, Jesse E
Hyslop, Kevin
Iacone, Nicholas J
Jackson, Harold D
Jackson, Luther C
Jackson, Sammy
Johnson, Corey

1

## APPENDIX B – Eligible Group 1 Employees

Aguirre, Ramon
Banfi, Joseph
Barrera, Robert
Bartholomew, Thomas
Bayak, Patrick
Bell, Kyle
Bianca Sr., Joseph A
Bond, William
Bradley, Nicholas
Brady, Scott
Brenner, Scott M
Caballero, Luis
Cantalupo, Glen
Cash III, William
Chasey, Michael P
Christian, Kevin
Christo, Thomas
Cittadino, Robert
Clark, James
Coakley, Kevin M
Diaz, Robert
Dipierno, Gabriel
Doherty, Timothy
Donovan, Joseph
Dottavio, Nicholas
Dunn, John T
Egan, Perry
Feinberg, Robert A
Fey, Dennis
Gojani, Robert
Grados, Julio
Hulette, Chris
Hunter Jr., Charlie H
Infranco, Andrew J

King, Pearley E
Layton, Jason
Loftus, Keith
Maroulakis, Paraskevas
Mazza, John
Medina, Raxon J
Melanson, Bradford
Mendoza, Hector
Monte, Paul E
Monteleone, Lawrence
Muscara, Frank
Nazro, Keith
Norris, James
Oglesby, Erik C
Olsen, Jeff
Petrov, Jon
Pinilla, Jason
Prelli, Michael
Ralph, David
Ramos Jr., Marcelino
Ray, Christopher
Recca, Frank
Rego, Michael
Reis, Rui
Salamone, Joseph M
Schindel, David
Sheldrick, Christopher
Smyth, John
Surujbali, Chet
Testagrose, Frank M
Viteri-Rosero, Cesar A
Vulpis, Jonathan
Wingo, Matthew
Yodice, Thomas S

Johnson, Eric
Jones, Franklin
Jordan, Reynold L
Kadeer, Abdul
Kelly Jr., Robert W
Kelly, Robert W
Khoury, Elias
Klamkin, Gary M
Koflowitch, Ira
Kolodziej, Peter E
Kouvel, Charles J
Kovacs, Gregory
Kreusch, Richard
La Rocca, Robert
Lam, Steve S
Laplaca Jr, Vincent A
Lardieri, Joseph G
Large, Scott A
Larusso, James V
Lasher, Andrew I
Latham, Albert J
Laveroni, Todd R
Layton, Stephen H
Lee, James
Lemanski, Mark F
Lentchner, David J
Levy, Robert
Lipari, Russell
Liseski, Joseph W
Liu, Ken
Lobosco, James J
Lodespoto, John J
Loftus, Josh D
Lopez, Miguel
Lopez, Nelson
Lotze, Eric W
Lubischer, William
Luna, David G
Lusk, John W
Lynaugh, Peter
Maikranz, Robert A
Maniscalco, Michael J
Many, Charles
Marin, Hector
Marrero, Carlos E
Martinelli, Angelo F

Mask, John
Matthews, Edward
Matthews, Glenn J
Matthews, James H
Maya, Miguel A
Mc Creay, James
McDonald, Edward
McGuire, Alan R
McLaughlin Sr., James F
McLaughlin, John G
McLeggon, Delroy
McMahon, Drew
McMickle, Robert E
Meany Jr., Thomas J
Mele, Louis
Meltzer, Robert M
Merckling, Robert N
Micioni, Louis A
Miles, Willie R
Miller Jr., Gregory J
Miller, Derrick
Miller, Kenneth
Miller, Stanley
Mink, Robert
Miranda, Felix I
Monte, Joseph A
Morales, Raymond
Mozolic, Ronald
Munn, Aundrey L
Munn, Charlene
Murphy, Timothy
Murray, Michael
Murray, Robert M
Murray, Sean
Naclerio, Joseph
Naclerio, Stephen
Nazario, Victor J
Ng, Careem F
Ngai, Gim
Nitopi, William W
Norton, John V
Nunnenkamp, Robert D
O'Malley, Michael K
Ottomanelli, Jerry
Padovano, Paul R
Padovano, Peter J

Palagonia Jr., Salvatore
Palette, Cary J
Pampinella, Phil
Paniagua, Elliott
Pape, George H
Parada, Zbignien
Pardo, Jaime
Pepe, Anthony J
Perez, Frank
Piazza, Vincent
Pilchuk, Michael
Pinerio, Robert
Pinto, Joseph
Piparo, Steven
Plantemoli, Joseph M
Pugliese, Pasquale
Puglisi, Phillip
Puser, Robert L
Rafferty, Eugene R
Raffone Jr., Louis
Ramos, David
Rawa Jr., John
Ray, Michael J
Rello, Thomas F
Repole, Anthony
Restrepo, Jhon
Rivera, John A
Rodriguez, Marco A
Roll, Robert
Ross, Robert L
Ruglio, Alphonse F
Ruiz, Jesus A
Ruvolo, Robert
Sabia, John
Sacheli, Charles
Sacripanti Jr., Mattew
Saint Louis, Wilfrid
Salicos, James P
Salvage, Gregory R
Sandoval, Louis P
Sanfilippo, Daniel
Sarrubbo, Gennaro
Scannelli, Raymond
Scelza, David P
Schaal, Joseph F
Schindel, Gary

2

Schneider, Norman
Schortemeyer, Alan L
Schriever, Craig W
Schwartz, John J
Sciandra, Thomas A
Segur, Thomas
Sherman, Anthony
Sherman, Joseph W
Sherman, Michael C
Sherman, Robert
Sherman, William E
Shields, Michael J
Shimonis, Joseph
Simonetti, Jesse
Singh, Narine
Slater, James I
Slicner, Michael
Smeriglio, Joseph
Sokol, Barry R
Sorensen, Frederick
Soto Jr., Manuel
Speciale, Louis
Speciale, Michael A
Starr, Michael
Stedman, Kenneth
Stefanelli, Ralph
Steiger, Brett
Stempel, Mark
Teart, Willie
Testagrose Jr, Thomas
Testagrose, Anthony
Tesyajantorn, Ayuthaya
Thomas, Gregory
Thomas, Jeffrey
Thomas, Peter D

Tinney, Brian
Traore, Modibo
Traynor, Robert N
Treistman, Donald
Tucciarone, Raymond
Urena, Juan I
Valentin, Eduardo
Valentine, James T
Van Dyne, Richard
Velardo Jr., Arthur B
Velardo, Richard F
Venturino, Edward T
Verlin, Ronald
Verlin, William
Vinceslio, Carl C
Vulpis, Daniel B
Walker, Michael E
Walker, Nathaniel
Waters, Bryan
Watson Jr, Joseph M
Weldon, Casey
Williams, Robert R
Wingo, Ronald
Yammine, George
Yodice, Vincent J
Zarrella, Michael
Zumpano, Anthony
Agnello, Roy
Berni, Alan J
Boyd, William D
Buccine Jr., Thomas E
Cassaro, John
Castro, Gilbert A
Cavallaro, Stephen
Chasey, Sidney A

Cooper Jr., George
Estok, Joseph F.
Fabiani, Christopher
Fahreddine, Munir S
Galife, John L
Gallagher, Robert J
Gibson, Larry D
Gilberti, Salvatore F
Gioia, Salvatore
Goncalves, Arthur J
Grassi, Anthony J
Hart, James J
Holbrook Jr, Harold T
Holm, Thomas G
Isom, Kenneth J
Jacobson, John Scott
Lee, George H
Loftus Jr., William H
Lyden, Kevin
Malizia, Anthony V
Mangino, Richard N
Mayer, Todd D
Menadier, Francis
Moran, Raimond M
Padovano, Peter A
Plenkers, Scott
Ray, Kenneth J
Rizzotti, Patrick
Santos, Rui M
Severo, Frank
Sherman, Vincent W
Shields Jr, John C
Sierra, David
Testagrose, Joseph M

EX. 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STEVE S. LAM and SAMMY JACKSON,          :          09 Civ.
                                                               :
                            Plaintiffs,          :          **ECF CASE**
                                                               :
        -against-                                     :          **NOTICE OF JOINDER AND**
                                                               :          **CONSENT TO REMOVAL**
THE NEW YORK TIMES COMPANY, CITY   :
AND SUBURBAN DELIVERY SYSTEMS, INC.:
and THE NEWSPAPER AND MAIL             :          New York Supreme Court,
DELIVERERS UNION,                             :          County of New York
                                                                     Index No. 09-107837
                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1446 et seq., Defendant

the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU") joins in the

Notice of Removal of Defendants The New York Times Company and City and Suburban

Delivery Systems, Inc. filed in the above-captioned action on or about June 22, 2009.


Dated: New York, New York
        June **22**, 2009

                                        COHEN WEISS AND SIMON LLP

                                        By: _____
                                                Bruce S. Levine
                                                330 West 42nd Street, 25th Floor
                                                New York, NY 10036
                                                *Attorneys for Defendant NMDU*